NARAYANAN, J.T.C.
Defendant, Director, Division of Taxation (“Director”) moves for summary judgment to dismiss the complaint on grounds that plaintiffs refund claim for New Jersey inheritance tax was untimely pursuant to N.J.S.A. 54:35-10. Plaintiff cross-moves for summary judgment on grounds that it is entitled to a refund of overpaid estimated inheritance tax under the pre-2008 version of N.J.A.C. 18:26-10.10.
For the reasons set forth below, the Director’s motion is granted.

FACTS

The facts are undisputed. Alvina Taylor died November 30, 2002. An inheritance tax return was due within eight months from the date of death. N.J.A.C. 18:26-9. Here, this date was July 31, 2003.
On August 7, 2003, the decedent’s estate (plaintiff herein) made a $75,000 estimated payment of inheritance tax. The payment *400 was accompanied by form IT-EP (05-93 [1]) titled “Inheritance and Estate Tax Payment on Account (Estimated Payment).” The lower half of the form noted that “the amount remitted with th[e] form is a payment on account (estimated payment) to be applied” towards either inheritance or estate tax or both. The estate checked “inheritance tax.” The form also explained that “[p]ayments on account may be made at any time to avoid further accrual of interest on the amount so paid. Any overpayment will be refunded after determination of the actual liability.”
On December 3, 2003, plaintiff made an additional estimated inheritance tax payment of $75,000. This payment was also accompanied by form IT-EP (12-99 [2]). This revised form, which was still for “Payment on Account (Estimated Payment)” of inheritance tax, did not have the language that the overpayments could be made anytime, and refunds would be made after determination of actual liability.
In 2004, the Director sent notices requesting a return with respect to the decedent’s estate. Having received none, she made an arbitrary assessment of $300,000 (plus accrued interest) on August 6, 2004. After crediting the estimated payment of $75,000 made August 2003 (but not the $75,000 paid December 2003), the Director demanded the balance payment of $250,318.53. The plaintiff did not administratively protest or appeal the assessment to the Tax Court.
In the absence of further payments or filing a tax return, and much after the expiration of the appeal period for the arbitrary assessment, the Director filed a Certificate of Debt in an amount of $239,053.94 [3] on April 28, 2008.
*401 Five years after the return was due (i.e., after July 31, 2003), the estate filed an inheritance tax return on August 19, 2008.[4] The return reported a total tax due of $108,092 (plus interest), less “payment on account” of $75,000 with a balance due of $49,873. This amount was paid with the return.
On January 1, 2009, the Director issued a “Notice of Assessment” with respect to the return, essentially accepting the filed return and the tax reported as due thereon ($108,062) plus interest. Since the total tax paid was $199,873 ($150,000 estimated payments made in 2003 plus $49,873 paid with the return), the refund due was $90,411.10. While agreeing to refund the amount paid with the return ($49,873), the Director denied refund of the balance of $40,538.10 because “the application for refund was made more than three years from the date that the tax was paid.”[5] The Director then issued a final determination stating that the refund claim was untimely under N.J.S.A. 54:35-10 and N.J.A.C. 26:36-3.9(a) (an estate tax regulation), which required all refund requests be within three years of the actual date of payment of the tax.

FINDINGS

Summary judgment will be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46 — 2(e); Brill v. Guardian Life Ins. Co. of Am,., 142 N.J. 520, 529, 666 A.2d 146 (1995). Here, there are no material facts in dispute. The issue involves the construction of statutes and the Director’s regulations. Thus, summary judgment is appropriate.
Certain well-established principles apply in statutory construction matters. The court’s analysis should begin with the plain
*402 language of the statute which is the “best indicator” of legislative intent. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). Courts will give “statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole.” Ibid, (citations omitted). Courts will not “presume that the Legislature intended something other than that expressed by way of the plain language.” O’Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002).
If however, “there is ambiguity in the statutory language that leads to more than one plausible interpretation” the court can review “extrinsic evidence, including legislative history, committee reports, and contemporaneous construction.” DiProspero, supra, 183 N.J. at 492-493, 874 A.2d 1039 (citation and internal quotations omitted). In addition, an examination of the agency’s interpretation of the statute is also appropriate. In re RCN of NY, 186 N.J. 83, 92, 892 A.2d 636 (2006). Courts give substantial deference to the Director’s interpretation of a statute due to her “expertise” in the “specialized and complex areas” of tax laws. Koch v. Director, Div. of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999). Nonetheless, a regulation cannot “give the statute any greater effect than its language allows” or be “inconsistent with the statute it purports to interpret.” Smith v. Director, Div. of Taxation, 108 N.J. 19, 26, 527 A.2d 843 (1987) (citations omitted).
A Statutory Construction
The relevant statute at issue is titled “Refund of erroneous tax payment” and reads as follows:
When any amount of a tax assessed pursuant to chapters 33 to 36 of this Title (section 54:33-1 et seq.) shall have been paid erroneously to the Director of the Division of Taxation, the Director of the Division of Budget and Accounting may, on satisfactory proof of such erroneous payment to the Director of the Division of Taxation and duly certified by him to the Director of the Division of Budget and Accounting, draw his warrant on the State Treasurer, in favor of the executor, administrator, person or persons who have paid the tax in error, or who may be lawfully entitled to receive the same, for the amount of the tax so paid in error, but all applications for repayment of such tax shall be made within 3 years from the date of such payment, or from the date of the final determination of a court of competent jurisdiction which establishes the fact that the decedent had no legal or equitable interest in the property on which the tax was assessed and erroneously paid, whichever is later; provided, however, no refund shall be made where such *403 final determination occurs more than 20 years after the date of death of the decedent.
[N.J.S.A. 54:85-10]
As relevant to this ease, the plain language of the statute makes it clear that any refund claim must be made within three years of the date of payment of the inheritance tax. Here, the refund sought ($40,538.10) was of tax overpaid in 2003. This was more than three years from the date the inheritance tax return was filed (August 2008) in which return the refund claim was established.
Plaintiff argues that N.J.S.A. 54:35-10 does not address estimated tax payments, hence, the statute is inapplicable. The legislative history of L. 1944 c. 74 § 1, which law expanded the refund claim period to three years, refutes this suggestion. It notes as follows:
The object of th[e] bill is to extend from two to three years the time within which application may be made ... for refunds of transfer inheritance tax erroneously paid.
The reasons for the bill are that very often payment of estimated amounts of transfer inheritance taxes are made to save the running of interest in situations in which because of litigation or other reasons the taxes cannot be definitely or finally assessed within the two-year period and under these circumstances if excess payments have been made the right to refund is lost because the application for refund cannot be made within the two-year period.
[Statement to Senate No. 113 (Feb. 21, 1944) 1 (emphasis added)
Clearly, the Legislature recognized that taxpayers make estimated payments to avoid interest running where the tax liability cannot be immediately ascertained for any reason, but still required that refund applications for such “excess” payments be made within three years of the date of payment of the excess tax. Consequently, a claim for overpayment of estimated inheritance tax must be made within three years of its payment. See also, Gifford v. Director, Div. of Taxation, 15 N.J.Tax 51, 59 (Tax 1995), wherein this court held that N.J.S.A. 54:35-10 applies “only to taxes which are mistakenly calculated and paid by the taxpayer.”
Thus, where a taxpayer makes an estimated payment of inheritance tax, whether based on estimated calculations of the decedent’s taxable estate or on an assumption that there could be a potential tax liability, the payment is predicated upon a belief or judgment that tax could be owing, and an early payment avoids *404 any interest that would be added to the potential tax liability. The taxpayer’s calculation of the amount of tax potentially due could be correct or wrong. When the actual tax is less than what was estimated (and paid), the taxpayer claims repayment because the payments made earlier should not have been made, thus, were paid in error because of a mistaken belief or judgment that tax could be owed.
N.J.S.A. 54:35-10 and its legislative history precludes plaintiffs argument that a pre-payment of tax becomes erroneous only after the Director makes an assessment and computes an overpayment and that therefore, the three-year period in N.J.S.A. 54:35-10 begins from the date of such assessment. The statute unequivocally states that the taxpayer has three years “from the date of the payment” to claim refunds. This plain language is clear evidence that (a) our Legislature consciously provided a finite period to claim repayment of excess payments and, (b) defined when that period commences. The legislative history is clear evidence of the intent to include pre-payments such as estimated tax payments within the statutory reach. Therefore, the date of payment of the tax clearly controls the commencement of the three-year period.[6] See, e.g., CIG Exploration v. Dept. of Revenue, 880 P.2d 601, 603 (Wyo.1994) (statute providing a two-year refund application period commencing from date of payment of overpaid tax is a statute of repose because the two-year period commences upon the occurrence of an event, “regardless of when the” overpayment is discovered, “consequently, the plaintiffs *405 claim may be barred before he is or should be aware that he has ... a claim.”).

B. Director’s Regulations

Plaintiff argues that the Director’s regulations, specifically, N.J.A.C. 18:26-10.10, is the controlling authority which entitles it to a refund without a need to make any specific refund claim or application within any finite time period. The Director maintains that the regulation cannot override the statutory limitation period enunciated in N.J.S.A. 54:35-10.
N.J.A.C. 18:26-10.10 addresses “Overpayment of account” and prior to 2008 provided as follows:
In any case where the amount paid on account for New Jersey Inheritance Taxes exceeds the amount of such tax due after final assessment has been made, the amount so overpaid is refunded by the State Treasurer in the due course of business without an application for refund.
[N.J.AC. 18:26-10.10]
Effective April 7, 2008, this regulation was amended to incorporate the language of N.J.S.A. 54:35-10 and to require written applications for refunds.[7] The regulation now reads:
In any case where the amount paid on account for New Jersey inheritance taxes exceeds the amount of such tax due after final assessment has been made, the amount so overpaid shall be refunded by the State Treasurer in the due course of business, provided, however, that all applications for a full or partial refund of the payment of the transfer inheritance tax shall be made within three years from the date of such payment, or from the date of the final determination of a court of competent jurisdiction, which establishes the fact that the decedent had no legal or equitable interest in the property on which the tax was assessed and erroneously paid, whichever is later; and provided, however, that no refund shall be made where such final determination occurs more than 20 years after the date of death of the decedent.
[N.J.A.C. 18:26-10.10]
*406 Even if the 2008 amendment to N.J.A.C. 18:26-10.10 was deemed inapplicable to this matter since plaintiff made estimated inheritance tax payments in 2003, the pre-2008 version of this regulation does not defeat the Director’s denial of a refund. A regulation cannot purport to trump the statute’s dictates. See Praxair Technology, Inc. v. Director, Div. of Taxation, 201 N.J. 126, 140, 988 A.2d 92 (2009) (“[t]he Director’s exercise of his regulatory powers is circumscribed by the taxing authority in fact conferred by the Legislature.”). The authority to pay the refund lies in N.J.S.A. 54:35-10, which imposes a three-year period for refund claims, commencing from the date of the payment of such tax as applicable to this case. See Texas Eastern Transmission Corp. v. Department of Treasury, Div. of Taxation, 11 N.J.Tax 561, 563 (Tax 1991) (the Director “may not allow a refund of tax unless authorized to do so by statute”).
The manner in which the Director, by regulations, enforces refund claims cannot trump the substantive requirement of the statute that the refund claim be made within the time limit set forth therein. Estate of Ehringer v. Director, Div. of Taxation, 24 N.J.Tax 599, 621 (Tax 2009) (“a regulation purporting to permit refund claims submitted after expiration of a statutory refund claim limitation period would raise significant legal concerns.”). Therefore, the language in the pre-2008 version of N.J.A.C. 18:26-10.10 that payment of taxes “on account” did not require a refund application does not negate the applicability or force of N.J.S.A. 54:35-10 to such payments.[8]
Moreover, the requirement in N.J.S.A. 54:35-10 for a refund application logically means that a taxpayer must provide some affirmative notice to the Director that the taxpayer has overpaid the tax and wants the same refunded. Without such notification, it would be impossible for the Director to even know of refund *407 claims let alone allow or deny the same in compliance with the provisions of N.J.S.A. 54:35-10. The statute only requires some affirmative action on part of the claimant. The manner in which such claim is made or notice is provided, i.e., the refund application, is not controlling. Such an application, as interpreted by the Director, can be by affidavit (see N.J.A.C. 18:26-10.12), on a prescribed form (see N.J.A.C. 18:2-5.2), or on the tax return itself (see N.J.A.C. 18:2-5.2(a)). Taxes paid prior to the return filing (and in connection with that return) are routinely claimed as credits on the tax return when computing the balance of tax due (see, e.g., Line 20 of the inheritance tax return filed by plaintiff), and claiming any refund if the prior payment(s) exceed the actual tax due (see, e.g., Line 22 of the return filed by plaintiff).[9] Note that a tax return is filed under penalties of perjury, akin to an affidavit required by N.J.A.C. 18:26-10.12 when making an application for a refund.
Plaintiff asserts it never knew N.J.S.A. 54:35-10 applied to it because N.J.A.C. 18:26-10.10 “sends the message” that the Director will, on her “own volition,” refund overpayments “after final assessment has been made” by her. But this duty of the Director to examine a return so as to determine whether tax is due or is to be refunded does not empower the Director to suspend or extend the limitations period in N.J.S.A. 54:35-10. The only authority to extend the limitations period is in the statute, namely, if there is a later final determination by a court that the decedent had no taxable property interest. N.J.S.A. 54:35-10 explicitly states that the three-year period begins from the date of payment of the tax, not from the date of the Director’s assessment.
That N.J.A.C. 18:26-10.10 was amended in 2008 to specify that refund applications must be made within three years of the tax *408 payment does not require a different conclusion. The amendment merely incorporates the statutory language of N.J.S.A. 54:35-10, which has been in effect since 1944, and restates that refund applications should be made within three year’s of payment of the overpaid tax. Regardless of the regulation, before or after its amendment, plaintiff was subject to the three year limitations period under the statute itself. See, e.g., Praxair, supra, 201 N.J. at 139, 988 A.2d 92 where the Court rejected the taxpayer’s argument that it had no notice of its taxability prior to a subsequently added example to a regulation because “no matter where along the temporal continuum the tax is applied ... either under the statute alone, under the regulation before the ... addition of an example, or after the example was added ... the logical and inescapable conclusion remains that plaintiffs activities” were taxable in New Jersey under the statute’s plain language and intent. The Court’s conclusion applies with full force to this matter.
This court finds that the pre-2008 version of N.J.A.C. 18:26-10.10 comported with the intent of N.J.S.A 54:35-10, and was a reasonable interpretation of the statute being within the fair contemplation of the enabling law. In this regulation, the Director simply provided for an alternative situation where an overpayment can occur, namely, estimated or advance payment of taxes. Pre-payment of taxes is a routine occurrence, see, N.J.A.C. 18:26-9.13(d) (to avoid penalty inheritance “tax believed to be owing” can be paid, and if there is any “overpayment ... a refund will be made”) and is recognized by the legislative history. Statement to Senate No. 113, supra. The post-2008 amendment to N.J.A.C. 18:26-10.10 does not alter or change the court’s determination since the amendment merely restated the law in existence since 1944.

C. State Tax Uniform Procedure Law

The Director argues alternatively that the plaintiffs refund claim would be untimely even under the State Tax Uniform *409 Procedure Law, specifically, N.J.S.A. 54:49-14(a).[10] This statute provides a taxpayer “any time within four years after the payment of any original or additional tax assessed against him” to make a refund claim, provided other or shorter limitations period is not provided by a specific state statute. Since this court has determined that overpayments of tax by plaintiff falls within the language and intent of N.J.S.A. 54:35-10, analysis of the issue under N.J.S.A. 54:49-14 is unnecessary.
Even if it is assumed that N.J.S.A. 54:35-10 does not apply to this matter, plaintiff is not entitled to a refund. It filed its inheritance tax return on August 19, 2008, which filing established the refund claim. This date was more than four years after payment of the estimated tax (in 2003).
A judgment will be entered by this court in accordance with this opinion, dismissing plaintiffs complaint.

 This number indicates the month and year that the Division of Taxation effectuated or revised the form, here May 1993.

 See supra, n. 1. Here, "12-99" indicates that Form IT-EP was presumably revised and in use as of December 1999.

 The Certificate of Debt appears to be for an incorrect amount inasmuch as it credited plaintiff with only one estimated payment of $75,000.

 No evidence was provided that extensions were sought to file the return beyond its due date of July 31, 2003.

 The Director also issued a Warrant of Satisfaction in connection with the Certificate of Debt.

 N.J.S.A. 54:35-10 allows a refund in connection with the tax "assess[ed]” under Chapters 33 to 36. Once a return is filed and tax accepted, the Director makes an assessment therefrom and either levies a tax or calculates a refund. N.J.S.A. 54:35-12; N.J.A.C. 18:26-8.6; N.J.A.C. 18:26-9.10. Not filing a timely tax return could be viewed as one of the "other reasons" where the tax cannot be finally or definitely assessed. Statement to Senate No. 113, supra. Thus, in such situations, the three-year refund claim period will apply. Ibid. Note that the Director is authorized to make an arbitrary assessment if a return is not filed. N.J.S.A. 54:49-5; N.J.A.C. 18:26-8.7. Here, this was done on August 6, 2004 in the amount of $300,000. Had plaintiff appealed this assessment to the Tax Court within the ninety-day period or filed a refund claim with respect to the arbitrary assessment within four years of payment of taxes pursuant to N.J.S.A. 54:34-13(a) and (b), it could have protected itself from any timeliness issues.

 The proposed regulation stated that the amendment “deletes language providing for inheritance tax refunds to be paid without any application being made for them because statutory law requires that an application for a refund be made within three years of the date of the erroneous payment. N.J.S.A. 54:35-10. Language in conformity with the statute is added to the existing rule section.” 39 N.J.R. 5185(a) (Dec. 17, 2007). There were no comments received from the public in this regard. 40 N.J.R. 1923(b) (April 7, 2008).

 Nor does the fact that there is a separate regulation addressing erroneous Overpayment of inheritance tax (NJ.A.C. 18:26-10.9) and the manner of making the refund claim (NJ.A.C. 18:26-10.12). The legislative history accompanying N.J.S.A. 54:35-10 evidences explicit legislative intent of including estimated inheritance tax payments made for any reason within the reach of the statute and the three-year refund period contained therein.

 Notably, plaintiff did not even make a refund claim on the tax return, which was due July 30, 2003, but filed August 18, 2008. Instead it claimed a tax was due in the amount of $49,873 and paid that amount. The Director refunded this amount (since the refund was within three years of the tax payment) in compliance with N.J.S.A. 54:35-10.

 The Director raised this alternative legal theory for the first time during oral argument of her summary judgment motion. The court allowed both parties to file supplemental briefs only on this issue. Rather than addressing this issue, plaintiff simply reiterated its arguments made in support of its cross motion for summary judgment.