28 A.3d 852 (2011)
422 N.J. Super. 336
ESTATE OF Alvina TAYLOR, Plaintiff-Appellant,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Respondent.
No. A-3501-09T3.
Superior Court of New Jersey, Appellate Division.
Submitted March 14, 2011.
Decided October 6, 2011.
*853 Wolfberg & Wolfberg, attorneys for appellant Estate of Alvina Taylor (Matthew Wolfberg, Union City, of counsel and on the brief).
Paula T. Dow, Attorney General, attorney for respondent Director, Division of Taxation (Melissa H. Raksa, Assistant Attorney General, of counsel; Heather Lynn Anderson, Deputy Attorney General, on the brief).
Before Judges A.A. RODRÍGUEZ, C.L. MINIMAN and LEWINN.
The opinion of the court was delivered by RODRÍGUEZ, A.A., P.J.A.D.
The Estate of Alvina Taylor appeals from the decision of the Tax Court, published at 25 N.J. Tax 398 (Tax 2010), granting the Director, Division of Taxation, summary judgment dismissing the Estate's complaint with prejudice and denying an inheritance tax refund. We affirm.
The operative facts are fully set forth in the Tax Court opinion. We only provide a summary to give a context for our discussion. These facts are not disputed.
Alvina Taylor died November 30, 2002, leaving a gross estate of $675,000. Pursuant to N.J.A.C. 18:26-9, an inheritance tax return was due no later than July 31, 2003. Eight days after the deadline had passed, the Estate made a $75,000 estimated payment of inheritance tax, and filed form IT-EP (05-95). This form noted that the amount remitted with the form "was an estimated payment to be applied" towards the inheritance tax, and stated that "any overpayment will be refunded after determination of the actual liability."
On December 3, 2003, the Estate paid an additional $75,000 on account along with a revised form IT-EP (12-99). This revised form does not contain the language concerning refunds being made after determination of actual liability.
On August 6, 2004, the Director requested the overdue inheritance tax returns; the Estate did not comply with this request. The Director made an arbitrary $300,000 plus interest assessment, and demanded the $250,318.53 balance. The Director now concedes that this amount is incorrect because it did not reflect the $75,000 payment made in December 2003. The Notice of Assessment reflected only one credit, a $75,000 payment made on August 11, 2003.
However, the Estate should have been aware upon receipt of the Notice of Assessment that its December 3, 2003 deposit had not been credited. The Estate took no action at that time. Nor did it protest by appealing the assessment to the Tax Court. After the expiration of the period to appeal the $300,000 assessment, the Director filed a Certificate of Debt for $239,053.94. Estate of Taylor, supra, 25 N.J. Tax at 400.
*854 Five years after the return was due, the Estate finally filed an inheritance tax return, which reported a total tax due of $108,092 plus interest, less payments on account. According to the return, this left a balance of $49,873, which was paid with the return.
On January 1, 2009, the Director issued a "Notice of Assessment" with respect to the return, accepting the amounts reported in the estate tax return as accurate. The Director determined that the Estate was entitled to a refund of $90,411.10 When the Estate requested the refund, however, the Director denied the request because "the application for refund was made more than three years from the date that the tax was paid." The Director then issued a final determination stating that the refund claim was untimely pursuant to N.J.S.A. 54:35-10 and N.J.A.C. 26:36-3.9(a). These authorities require all refund requests to be made within three years of the actual payment of the tax.
The Estate sought review in the Tax Court. The Director moved for summary judgment, and the Estate cross-moved. The Tax Court judge granted summary judgment to the Director and denied it to the Estate. Taylor, supra, 25 N.J. Tax at 409.
On appeal, the Estate contends that the judge erred by failing to preclude the Director, pursuant to the "Square Corners Doctrine," from asserting the Statute of Limitations, N.J.S.A. 54:35-10, as a defense to a taxpayer's claim for a refund of an overpayment of inheritance taxes, "where [the Director] mistakenly promulgated a regulation and instruction that erroneously misstates the applicable law."
At the outset, we note that the Estate does not challenge the accuracy of the amounts in the Director's January 2009 Notice of Assessment. Nor does the Estate contend that the limitation set by N.J.S.A. 54:35-10 is not applicable generally to a request for an inheritance tax refund. Rather, the Estate's argument is that the Square Corners Doctrine is applicable to this case, and should bar the Director from raising the statute of limitations as a reason for denying this refund request.
The Square Corners Doctrine was articulated by the Supreme Court in F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27, 495 A.2d 1313 (1985). The Court explained:
We have in a variety of contexts insisted that governmental officials act solely in the public interest. In dealing with the public, government must "turn square corners." Gruber v. Mayor and Tp. Com. of Raritan Tp., 73 N.J.Super. 120 [179 A.2d 145] (App.Div.), aff'd, 39 N.J. 1 [186 A.2d 489] (1962). This applies, for example, in government contracts. See Keyes Martin v. Director, Div. of Purchase and Property, 99 N.J. 244 [491 A.2d 1236] (1985). Also, in the condemnation field, government has an overriding obligation to deal forthrightly and fairly with property owners. See Rockaway v. Donofrio, 186 N.J.Super. 344 [452 A.2d 694] (App. Div.1982); State v. Siris, 191 N.J.Super. 261 [466 A.2d 96] (1983). It may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another.
Similarly, the statutory provisions governing substantive standards and procedures for taxation, including the administrative review process, are premised on the concept that government will *855 act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives. To that end, it is expected that it will make proper assessments, which are accorded a strong presumption favoring their validity, see Pantasote v. City of Passaic, 100 N.J. 408 [495 A.2d 1308] (1985)[.]
[Ibid.]
We begin by focusing on the pertinent statute. N.J.S.A. 54:35-10 states, in pertinent part:
When any amount of a tax assessed ... shall have been paid erroneously to the Director of the Division of Taxation, the Director of the Division of Budget and Accounting may ... draw his warrant on the State Treasurer, in favor of the executor ... for the amount of the tax so paid in error, but all applications for payment of such tax shall be made within three years from the date of such payment.
[N.J.S.A. 54:35-10.]
This statute was enacted in 1944, and has remained unchanged since 1956. L. 1944, c. 74; L. 1956, c. 54. Therefore, this statutory scheme had been in place for fifty-five years in its present form, when the Estate made the two $75,000 payments on account, and on August 14, 2008, when the Estate filed its long overdue inheritance tax return.
The Estate's argument is based on the fact that at the time of its first payment on account, the version (ITR-02-03) of the instructions for the Inheritance Return stated that "any overpayment will be promptly refunded upon determination of the actual amount payable." The Estate argues that for that reason, it made no request for a refund, although it concedes that in 2009, the Director changed the form to accurately reflect the statutory mandate and eliminate the information that a refund would be made without an application.
The standard of review here is well-settled. If there are any material issues of disputed facts, we must view the proofs in the light most favorable to the taxpayer as required by Coastal Eagle Point Oil Co. v. W. Deptford Twp., 19 N.J. Tax 301, 304 (App.Div.2001); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995). We also accord the Director's decision a presumption of correctness in light of the Director's expertise. H.J. Bradley, Inc. v. Taxation Div. Dir., 4 N.J. Tax 213, 229 (Tax 1982). That is particularly true when the Director's expertise is exercised in the "specialized and complex area" of the tax statutes. Metromedia v. Dir., Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). We also defer to the expertise of the Tax Court. Thus, we have a limited scope of review following a determination of that court.
Applying that standard here, we affirm. We concur with the judge's analysis and conclusion that
the pre-2008 version of N.J.A.C. 18:26-10.10 comported with the intent of N.J.S.A. 54:35-10, and was a reasonable interpretation of the statute being within the fair contemplation of the enabling law. In this regulation, the Director simply provided for an alternative situation where an overpayment can occur, namely, estimated or advance payment of taxes. Pre-payment of taxes is a routine occurrence, see N.J.A.C. 18:26-9.13(d) (to avoid penalty inheritance "tax believed to be owing" can be paid, and if there is any "overpayment ... a refund will be made") and is recognized by the legislative history. Statement to Senate *856 No. 113, supra. The post-2008 amendment to N.J.A.C. 18:26-10.10 does not alter or change the court's determination since the amendment merely restated the law in existence since 1944.
[Taylor, supra, 25 N.J. Tax at 408.]
Because we reject the Estate's claim that it was misled and confused by the use of a pre-2008 form, we conclude that the Square Corners Doctrine is not implicated here. We find no indication that the Director failed to comport herself in this matter "with compunction and integrity." W.V. Pangborne & Co. v. New Jersey Dep't of Transp., 116 N.J. 543, 561, 562 A.2d 222 (1989). Nor did the Director "create confusion, disagreement and the disappointment of reasonable expectations that smacks of unfairness." Id. at 562, 562 A.2d 222.
The simple fact here is that the Estate made a mistake in August 2003, when it received the Notice of Assessment, which did not reflect a $75,000 payment it had made. It did not request that the credit be reflected in the Notice of Assessment. The Estate seeks to evade the bar set by N.J.S.A. 54:35-10, by shifting blame to the Director for issuing inaccurate instructions. However, for several decades, the statute has been clear in its requirement that refunds be sought within three years of payment. The judge found that the pre-2008 inheritance tax forms and instructions were not misleading.
We also concur with the Tax Court's rejection of the Estate's argument that an estimated payment of tax only becomes erroneous after the Director makes an assessment, and therefore, the three-year period begins from the date of such assessment. Taylor, supra, 25 N.J. Tax at 404. The judge held that "[t]he statute unequivocally states that the taxpayer has three years `from the date of the payment' to claim refunds. This plain language is clear evidence that (a) our Legislature consciously provided a finite period to claim repayment of excess payments and, (b) defined when that period commences." Ibid. (quoting N.J.S.A. 54:35-10).
In sum, we agree with the Tax Court that the bar of the statute of limitations applies, and the Estate has advanced no persuasive reason why it should not be enforced in this case.
Affirmed.