PER CURIAM.
Defendant Township of Lyndhurst (“Lyndhurst”) appeals from a July 22, 2013 Tax Court judgment reducing plaintiff Red Roc Realty, L.L.C.’s (“Red Roe”) 2006, 2007, and 2008 real property tax assessments. Lyndhurst contends primarily that the Tax Court judge erroneously established the fair market value of contaminated property (“the property”) by considering its 2006 sale price. We affirm.
The property consists of an 8.8 acre parcel of land improved with a 100,230 square foot building. Over the years, the property was used for industrial activity and became contaminated. In 2003, a predecessor owner of the property, Benedict Miller, Inc. (“BMI”), became obligated to remediate the contamination pursuant to the Industrial Site Recovery Act (“ISRA”), N.J.S.A. 13:1K-6 to -14. BMI decided to sell the property rather than clean it up.
In November 2005, Red Roc contracted with an affiliate of BMI, plaintiff Orient Way Corp., to purchase the property for $2,500,00o.[1] Red Roc agreed to clean up the property, subject to the New Jersey Department of Environmental Protection (NJDEP) approving its remediation plan. Red Roc failed to obtain approval and was therefore unable to secure financing prior to the real estate closing. BMI then took back a mortgage, which *275 allowed Red Roc to own the property while pursuing NJDEP remediation approval. On May 1, 2006, Red Rock closed title on the property.
Red Rock made good faith efforts to obtain remediation approval, but it failed to do so. As a result, in September 2008, Red Rock sold the property to Orient Way, L.L.C. (“Orient Way”) for $2,400,000. Orient Way thereafter assumed responsibility for the remediation.
Lyndhurst issued real property annual tax assessments to Red Roe in the amount of $6,837,900 for the years 2006,2007, and 2008. Red Roe filed complaints in the Tax Court challenging these assessments. The parties agreed that the value of the property in its uncontaminated state (“clean values”) would be $5,100,000 for the 2006 tax year, $5,200,000 for the 2007 tax year, and $5,400,000 for the 2008 tax year. They disputed the fair market value of the property in its contaminated state. This dispute was the focus of a one-day trial.[2]
Tax Court Judge Patrick DeAlmeida took testimony from an expert on New Jersey property appraisals, Red Roc’s environmental specialist, and a representative from Red Roc. He issued a thirty-six-page written opinion and entered the judgment under review. He found that the 2006 sale price of $2,500,000 was “credible evidence of a market-derived sales price of [the property] reached through arms’ length negotiations in which the parties were in possession of an expert’s estimate of remediation costs.”[3] Orient Way Corp. v. Twp. of Lyndhurst, 27 N.J.Tax 361, 389 (Tax 2013).
*276 The Tax Court judge distinguished Inmar Assocs., Inc. v. Borough of Carlstadt, 112 N.J. 593, 549 A.2d 38 (1988), Badische Corp. (BASF) v. Town of Kearny, 288 N.J.Super. 171, 672 A.2d 186 (App.Div.1996), and Metuchen I, L.L.C. v. Borough of Metuchen, 21 N.J.Tax 283 (Tax 2004), stating that “[tjhere is no need to resort to the discounting of estimated remediation costs” to determine the effect of the contamination on the property’s value because the market had already done so here. Orient Way, supra, 27 N.J.Tax at 390-91. He concluded that using a single sale to constitute the fair market value of the property was appropriate. He explained that
[although] it is generally true that this court is reluctant to accept a single sale as evidence of market value, that reluctance is overcome in this case for several reasons. First, the single sale is of the [property] in close proximity to the first valuation date. Second, the court cannot reasonably expect to uncover additional sales of contaminated properties sufficiently similar to the subject to serve as credible evidence of value____[It is likely that the contamination is] unique in type and dimension and that the scope and nature of necessary remedial measures will vary greatly depending on the identity and scope [45] of the polluting agents. Adjustments to sales prices in these circumstances would be problematic. The Supreme Court recognized as much in Inmar, where it suggested ... that “a measure of flexibility” might be necessary to determine the appropriate assessments for this type of property. Third, this court must remain mindful of the Supreme Court’s directive ... to “be cognizant of expense incurred by litigants” in prosecuting tax appeals and aware that sometimes the factual circumstances of a case, while unusual, require an appropriate and pragmatic application of the existing and relevant statutory scheme.
[Id. at 391 (citations omitted).]
Thus, the Tax Court judge concluded that the trae market value of the property for the 2006 tax year was the sale price of $2,500,000. Id. at 391-92. For the 2007 tax year, he applied a two and a half percent increase to account for appreciation, arriving at $2,562,500. Id. at 392-93. He then applied a five percent increase to reach $2,690,600 for the 2008 tax year.[4] Id. at 393-94.
On appeal, Lyndhurst argues that the Tax Court judge erred by (1) ignoring the parties’ stipulated clean values, using instead the 2006 sale price which Lyndhurst contends contravenes the holding in Inmar; (2) failing to amortize the present value of the remedia *277 tion costs; (3) using the 2006 sale price, which Lyndhurst asserts did not reflect true market value of the property; and (4) reducing the tax assessments even though Red Roc purportedly conducted business on the property during 2006, 2007, and 2008.
Our review of a decision by the Tax Court is highly deferential and “we have a limited scope of review following a determination of that court.” Estate of Taylor v. Dir., Div. of Taxation, 422 N.J.Super. 336, 341, 28 A.3d 852 (App.Div.2011). Because the Tax Court has “special expertise,” its findings will not be disturbed unless they are arbitrary or lack substantial evidential support in the record. Yilmaz, Inc. v. Dir., Div. of Taxation, 390 N.J.Super. 435, 443, 915 A.2d 1069 (App.Div.), certif. denied, 192 N.J. 69, 926 A.2d 854 (2007). Conversely, we review the Tax Court’s legal determinations de novo. UPS v. Dir., Div. of Taxation, 430 N.J.Super. 1, 8, 61 A.3d 160 (App.Div.), certif. granted, 216 N.J. 5, 75 A.3d 1160 (2013).
Applying these standards, we conclude that Lyndhurst’s arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the Tax Court judge in his thorough written decision. Orient Way, supra, 27 N.J.Tax 361. We add the following comments.
A municipality is entitled to a presumption that an original tax assessment is valid, and the appealing taxpayer has the burden of proving that the assessment is erroneous. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-13, 495 A.2d 1308 (1985). If the taxpayer overcomes this presumption, then the Tax Court is to fix the assessment by “appraising] the testimony [and] mak[ing] a determination of [the] true value [of the property].” Rodwood Gardens, Inc. v. City of Summit, 188 N.J.Super. 34, 38, 455 A.2d 1136 (App.Div.1982).
When assessing the true value of contaminated property for which only estimated remediation costs are available, the Supreme Court has held that
(1) the [remediation] cost, even if known or reasonably estimated, cannot reduce the market value on a dollar-for-dollar basis; (2) market value is affected and the *278 effect cannot be ignored, because the New Jersey Constitution requires assessment at trae value; (3) non-classical, flexible approaches to valuing such property are required; and (4) treating the cost of cleanup as a depreciable capital improvement “contains the seeds of useful doctrine.”
[Badische (BASF) Corp. v. Town of Kearny, 17 N.J.Tax 594, 597 (App.Div.1998) (quoting Inmar, supra, 112 N.J. at 605-07, 549 A.2d 38).]
Here, once the Tax Court judge concluded that Red Roc had overcome the presumption of validity — because the stipulated clean values demonstrated that both parties agreed that the original assessment was no longer accurate — he then had to assess the property’s true value. Orient Way, supra, 27 N.J.Tax at 378.
We reject Lyndhurst’s contention that the Tax Court judge erred by ignoring the parties’ stipulated clean values. Using the stipulated clean values as true market value would completely ignore the effect of contamination on the property’s value, which was precisely what the Inmar court instructed not to do. See Inmar, supra, 112 N.J. at 605, 549 A.2d 38. It is clear that the stipulated clean values cannot be reflective of true market value absent some kind of reduction to account for the contamination. Here, the appraisal expert testified that the parties specifically factored the estimated remediation costs into the sale price. The Tax Court judge did not “simply ... deduct the cost of the cleanup from a putative value of the property.” Ibid. He used the 2006 price of the property, conforming to the plain language of Inmar.
Lyndhurst’s argument that the estimated remediation costs were too speculative without NJDEP approval is also unpersuasive. NJDEP approval is not required. See e.g., Id. at 610, 549 A.2d 38 (remanding for the Tax Court to determine the effect of contamination despite the lack of government approval); Badische, supra, 288 N.J.Super. at 180, 184-85, 672 A.2d 186 (remanding for the same reason where the property owner had not even submitted any plans to the NJDEP).
We reject Lyndhurst’s contention that the Tax Court judge should have amortized the present value of the remediation costs over a period of years, like the Tax Court did in Metuchen, supra, 21 N.J.Tax at 293. The facts in Metuchen called for the amortiza *279 tion method because that plaintiff purchased the property for only $100, whereas here there was credible evidence of extended negotiations resulting in an arm’s length transaction. Id. at 286. The Tax Court judge in Metuchen also had a sufficient evidential basis to conclude that the cleanup would take five years — which allowed for the amortization method — whereas there was no such determination made in this case. Id. at 294. And, as the Tax Court judge noted in his opinion, there was “no need to resort to the discounting of estimated remediation costs,” because unlike Metuchen, there was “evidence of market sales.” Orient Way, supra, 27 N.J.Tax at 390.
We are not persuaded by Lyndhurst’s argument that the property’s 2006 sale price does not reflect true market value. An arm’s length sale of the property, like the sale involved in this matter, can reflect true market value. Glen Wall Assocs. v. Twp. of Wall, 99 N.J. 265, 282, 491 A.2d 1247 (1985). When using a single sale, courts must ensure that the sale is in fact reflective of true market value, “appraising] the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value.” Ibid.
Here, the Tax Court’s finding that the 2006 sale price was reflective of true market value is supported by sufficient credible evidence in the record. Although the Tax Court judge noted a general reluctance of courts to “accept a single sale as evidence of market value,” he considered three circumstances surrounding the 2006 sale — proximity of the sale to the first valuation date, lack of comparable sales, and need for a flexible and pragmatic approach — to conclude that the sale price was the “best evidence ... of the true market value.” Orient Way, supra, 27 N.J.Tax at 390-91.
Finally, there is sufficient credible evidence in the record to support the Tax Court’s finding that the property was not “in use,” and that Red Roe’s use of the property was, at best, “modest” and “incidental.” Id. at 386-88. Red Roc did not seek “a windfall through a reduction in the property’s assessed value *280 while also benefiting from its continued, use of the property for the very purposes that caused the contamination.” Id. at 387.
Affirmed.

 Orient Way Corp. is named as a plaintiff because of its interest in the property during the tax years in question.

 Prior to trial, Lyndhurst moved to bar Red Roc's Preliminary Assessment Report, Site Investigation Report, a Memorandum of Agreement with the NJDEP, and testimony regarding cleanup costs, which the Tax Court judge denied. See Orient Way Corp. v. Twp. of Lyndhurst, 27 N.J.Tax 361, 374-75 (Tax 2013).

 The Tax Court gave no weight to the September 2008 sale of the property because that sale related to the 2009 tax year. Id. at 392 n. 4.

 The judge applied the same percentage used by the parties to calculate the stipulated clean value for 2007 and 2008.