**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0789-18T3

XPEDITE SYSTEMS, INC.,

     Plaintiff-Appellant,

v.

DIRECTOR, DIVISION OF
TAXATION,

     Defendant-Respondent.

_____

Argued October 17, 2019 – Decided January 9, 2020

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the Tax Court of New Jersey, Docket No. 018847-2010.

Zachry T. Gladney (Alston & Bird, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant (Alston & Bird, LLP, attorneys; Steven L. Penaro and Zachry T. Gladney, on the briefs).

Michael J. Duffy, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Michael J. Duffy, on the brief).

PER CURIAM

Plaintiff Xpedite Systems, Inc. (Xpedite) appeals from a September 5, 2018 Tax Court order denying its motion for summary judgment, granting defendant Director, Division of Taxation's (Division) cross-motion for summary judgment, and dismissing plaintiff's complaint. Xpedite argues the Tax Court judge erroneously calculated the portion of income, or "receipts," Xpedite earned from services performed in New Jersey between 1998 and 2002, that should have been allocated to New Jersey for tax purposes. We affirm primarily for the reasons stated in the thorough written opinion of Judge Mala Sundar.

Xpedite is a broadcast fax service incorporated in Delaware with headquarters in New Jersey. Users of Xpedite's services, generally businesses, send their customer lists, customer contact information, and documents to Xpedite's New Jersey headquarters via their own fax machines, telephone lines, or computer internet servers. Once the user's documents and customer lists are received at Xpedite's New Jersey headquarters, Xpedite uses its proprietary software, located on computers in its New Jersey headquarters, to quickly send out a large volume of faxes, e-mails, or voice messages. Xpedite's software can also add features such as message-opening tracking and links within the

messages that allow its users' customers to forward the messages to their contacts.

The messages go out through a multi-state network made up of leased phone lines and some of Xpedite's own switching hardware. The messages are tracked to make sure delivery is successful, and Xpedite compiles reports at their New Jersey headquarters for its users so they can see the delivery status of their messages. Xpedite's mass e-mail and fax messaging services include a variety of formats and options. Users are charged per minute or per page for fax services, per file size for e-mail services, and per minute for other services.

Instead of sending faxes out individually to their customers, users send a single transmission through Xpedite's system to a list of fax addresses, which will be distributed to multiple recipients in a matter of minutes. Users can also upload customer lists and documents through Xpedite's website. After the user uploads their customer list file, the user then uploads the document file they would like to have sent to their customer list. For e-mails, Xpedite offers other add-on services.

From its New Jersey location, Xpedite distributes the document to the user's customer list by entering the destinations into its proprietary routing software program, contained in hardware located in New Jersey. For faxes,

3

Xpedite's proprietary software then determines the "least cost route" (LCR) for fax delivery. The information is then sent by telephone line, to switches, called "remote fax delivery controllers" (RFDC), which are located both inside and outside of New Jersey. The RFDC then connects to phone lines, both in and out of New Jersey, to broadcast the messages. If the initial route is tied up, the broadcast message is re-routed to another line to facilitate a timely delivery. Intrastate broadcasts "almost always are done from an out of state []RFDC[] because interstate rates are usually less than intrastate rates."

For e-mails, after a job submission is uploaded to Xpedite's website, Xpedite's program runs checks to verify all required information is present; validates data; cancels invalid, duplicate, and blocked addresses; retrieves lists and profile specifications; creates a basic template for the message; and incorporates the user's additions. The program then creates an individual, customized message for every recipient and sends them by "forward[ing] each customized message to the [i]nternet mail server that handles domain mail for the destination. Once every message is on its way to its target address, a posting report is generated, if [the user] requested one." Once a connection is made to a carrier's phone lines, Xpedite monitors to ensure a successful transmission,

4

then sends users reports on the results of both fax and e-mail broadcasts and deliveries.

For the years at issue herein, 1998 to 2002, Xpedite calculated its receipts and allocated them to New Jersey according to where it billed its customers, utilizing N.J.A.C. 18:7-8.10(a). While Xpedite receives all, or nearly all, orders at Tinton Falls and the orders are processed and sent out through the Tinton Falls "core platform," New Jersey users made up less than ten percent of Xpedite's total users in the years at issue.

Xpedite was audited by the State of New Jersey for Corporation Business Tax (CBT), Gross Income Tax (GIT), Sales Tax, and Use Tax for the years relevant to this inquiry. On May 11, 2007, the auditor issued an amended narrative finding Xpedite had been calculating its receipts for the period in question as per N.J.A.C. 18:7-8.10(a) Example Two, which describes a situation

> where a taxpayer earns income from long distance telephone calls. The taxpayer bills the originators of the long-distance calls. The example states that the appropriate method of allocating the long-distance [(LD)] revenue attributable to services performed in N[ew] J[ersey] is to base it upon billings for calls originating in N[ew] J[ersey].

The auditor stated that Xpedite was sourcing sales to the state where invoices were billed—the address where its customer's accounts payable are processed.

The auditor determined that Xpedite is a telecommunication retailer and not a telecom provider because it does not originate the carrier signal service (dial tone), but rather uses the signal much like a freight company uses a toll road. Xpedite sends customers' information over the carrier signal.

Although Xpedite calculated its receipts for the CBT according to where its customer's accounts payable are processed, the auditor found this method did not accurately calculate New Jersey receipts, did not reflect the trade, business practice, and economic realities underlying the generation of charges for the services, and did not reflect Xpedite's business activities in New Jersey. Pursuant to N.J.S.A.54:10A-8 and -10, the auditor suggested three alternate methods to determine Xpedite's New Jersey receipts, all "reflect[ing] a measurement of transmission origination." The auditor's suggested methods were:

> [Alternate method one:] Per Jeffrey Carter, Sales Tax Billing Manager (6/30/2004), New Jersey is the origination point of all transmissions, thus the service allocation would be 100%;
>
> [Alternate method two:] Per Gary Schwerdt, Manager of Network Cost & Routing (7/26/2004), approximately 98% of all telecom services originate in New Jersey, thus the service allocation would be 98%;
>
> [Alternate method three:] Per Gary Schwerdt, Manager of Network Cost & Routing (7/26/2004), 59.32% of the

6

RFDC (switching devices) which receive the transmission from New Jersey are located in New Jersey. The remaining 40.68% of the devices are located outside of New Jersey but are directed by New Jersey. Transmissions destined for New Jersey are almost always routed through equipment located outside of New Jersey. Service allocation would be 89.83%.

Because sales of services originated and were performed in New Jersey and thus sourced to New Jersey, the auditor maintained that the receipts factor should be 100%.

However, the auditor was directed by the Division to instead allocate receipts to New Jersey in accordance with N.J.A.C. 18:7-8.10(c), which allocates twenty-five percent of receipts to the state of origin, fifty percent of receipts to the state where the service is performed, and twenty-five percent of receipts to the state of termination for "a total of 76.306% of receipts allocable to New Jersey." On September 28, 2007, the Division sent Xpedite a notice of assessment related to its final audit determination, stating that as a result of the audit, Xpedite was liable for $4,975,353.02, including penalty and interest, for CBT and Sales and Use Tax for the years 1998 to 2005. Xpedite contested the Division's assessment and the matter was reviewed.

On August 4, 2010, conferee Nita Vakharia (Conferee Vakharia) issued a conference report with her findings. Based on the fact that Xpedite had its main

location in New Jersey, all the faxes and e-mails for mass mailing originated and were processed in New Jersey, the equipment was located in New Jersey, and the service was performed in New Jersey, Conferee Vakharia found that under United Parcel Serv. Gen. Serv. Co. v. Director, Div. of Taxation, 25 N.J. Tax 1 (Tax 2009), aff'd, 430 N.J Super. 1 (App. Div. 2013), aff'd, 220 N.J. 90 (2014), 100% of the receipts should be allocated to New Jersey under N.J.A.C. 18:7-8.10(a).  Therefore, because the Division had only apportioned seventy-six percent of receipts to New Jersey, Conferee Vakharia upheld the audit assessment based on the twenty-five – fifty – twenty-five formula under N.J.A.C. 18:7-8.10(c).  On August 6, 2010, the Division issued a final determination to Xpedite stating the audit assessment had been upheld, and that $6,160,570 was due.

On November 2, 2010, Xpedite filed a complaint in the Tax Court of New Jersey, contesting the final determination regarding the CBT tax allocation only. Both parties moved for summary judgment and the Tax Court denied both motions, holding that facts had not yet been sufficiently developed to decide the percentage of allocation of Xpedite's sales receipts properly allocable to New Jersey.  To that end, the Division deposed Gary Schwerdt, Xpedite's manager

for least-cost routing and network cost and routing. No one from Xpedite's current ownership group or management appeared at the deposition.

On June 2, 2017, Xpedite again moved for summary judgment, submitting its secondary public offering filing and Securities and Exchange Commission (SEC) filings as evidence of its business model. The Division cross-moved for summary judgment, providing Schwerdt's deposition to establish Xpedite's business model. Xpedite argued that it should be taxed under N.J.A.C. 18:7-8.10(a), but not 100% as the auditor originally determined and which Conferee Vakharia found would be appropriate. Rather, Xpedite asserted it should be taxed according to Example Two which demonstrates how a long-distance telecommunications company, which earns its income from "the sale of long distance telephone communications service" and bills the customers who initiate the call directly for all calls placed by them, should allocate the receipts to New Jersey based on "billings for calls originating in New Jersey."

Xpedite asserted the economic realities of the way it generates receipts are like a long-distance telephone service. Xpedite argued given those similarities, it should source receipts using the same methodology because the services are performed under the statute at the location the services are received by the customer. Xpedite contends the services are received by their users at

the user's billing location. Xpedite further argued that the "origination" of the transmission is not in New Jersey, but at the user's location when and where the user faxes or sends their order to Xpedite. Xpedite also asserted that N.J.A.C. 18:7-8.10 subsection (c) does not apply to them under United Parcel, as that subsection is only meant for those businesses that are not located in New Jersey, but where transactions "barely touch[]" New Jersey.

On September 5, 2018, the Tax Court issued an order and opinion relying on the SEC filings, Schwerdt's deposition testimony, and the undisputed material facts recited by each party. The court made extensive factual findings and legal conclusions, denied Xpedite's motion for summary judgment, granted the Division's cross-motion for summary judgment, and dismissed Xpedite's complaint. The Tax Court affirmed the Division's assessments, stating that "the material facts are undisputed as are the documents in support of each party's summary judgment motion. Although parties may draw different conclusions from the undisputed facts and documents, the court is not bound by the differing interpretations as a reason to deny summary judgment."

The Tax Court further found that

> [The Division]'s audit determined that Xpedite's allocation based on its costs-of-performance inadequately represented the receipts allocable to New Jersey. Xpedite provides nothing to contradict this

10

basis for the CBT assessments. Rather, it offers an alternate methodology, namely Example [Two]. An example cannot trump a statute or regulation. Further, the language and intent of Example [Two] shows that it is limited to regulated LD carriers, [and] thus would not apply to Xpedite. Even if Example [Two] is deemed to be ambiguous as to its intendment and reach, it will not apply to Xpedite because the clear intent of the controlling statutes and implementing regulation is an inclusion of all receipts, pursuant to which, and based on the facts presented to the court, would require 100% of Xpedite's receipts as allocable to New Jersey.

The court noted N.J.A.C. 18:7-8.10(a) is "broadly intended," providing that an allocation methodology for receipts for "services performed within the state" must "reflect the trade or business practice and economic realities underlying the generation of the compensation for services" so that receipts from services are subject to the CBT and must be allocated to New Jersey if they are not otherwise apportioned.

Relying on United Parcel, 25 N.J. Tax at 36, the Tax Court determined that even where users accessing a data processing service were out-of-state, 100% of receipts were taxable to New Jersey because the equipment that performed data processing, as well as the personnel operating, maintaining, and repairing the equipment, were all located in New Jersey.

11

Because Xpedite does have some switching devices located out-of-state, the court found it was not unreasonable or arbitrary for the Division to use the twenty-five – fifty – twenty-five methodology to allocate Xpedite's receipts.

The Tax Court rejected Xpedite's argument that it fits into Example Two of N.J.A.C. 18:7-8.10(a) because at the time Example Two was promulgated, telecommunications providers were subject to fees and tariffs, as well as Federal Communications Commission regulations, none of which apply to Xpedite. Rather, Xpedite is dependent on such carriers for its business, transmitting its users' calls, and for call origination and termination. Finally, the Tax Court noted that even if the terms in Example Two are vague, "an example or illustration cannot limit or expand the statute or the regulation . . . [m]oreover, the issue in this case is the reasonableness of [the Division's] allocation methodology as to which it has 'broad authority' to make adjustments which would 'accurately and fairly' represent a taxpayer's 'activity, business, receipts.'" (quoting Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 323 (1984)). The Tax Court also resolved the apparent inconsistency of Xpedite's sales taxes, which are collected for "telecommunications services," in that the Sales and Use Tax Act "broadly defines telecommunications" and

> also because the issue here is the allocation of receipts
> to New Jersey, where consideration must be given not

12

just to the nature of services, but also to the cost of performance and economic realities, and Example [Two] is limited to an LD telephone company, of LD telephone calls, and of toll revenues from LD calls.

The court noted that the "economic reality" of Xpedite's business is that

almost everything to do with the fax blasts [(Xpedite's services)], occurs in New Jersey . . . the fact that it uses RFDC's or POPs [(point of presence)] located outside New Jersey is only to lower costs, and does not change the fact that the transmissions begin in New Jersey (the [user] is presumably using its own [local telephone lines] to send its order to Xpedite, thus, Xpedite cannot claim to be providing LD telephone services to its customer in this regard.).

The Tax Court found the Division's allocation of receipts was in line with the language and intent of the controlling statute and regulations, and that its adjustment to Xpedite's allocation factor was reasonable under Metromedia. The Tax Court also found that Xpedite had not met its burden of overcoming the presumptive correctness of the Division's CBT assessments. This appeal followed.

Our review of a decision by the Tax Court is highly deferential and "we have a limited scope of review following a determination of that court." Estate of Taylor v. Dir., Div. of Taxation, 422 N.J. Super. 336, 341 (App. Div. 2011). Because the Tax Court has "special expertise," its findings will not be disturbed unless they are arbitrary or lack substantial evidential support in the record.

13

Yilmaz, Inc. v. Dir., Div. of Taxation, 390 N.J. Super. 435, 443 (App. Div. 2007). Conversely, we review the Tax Court's legal determinations de novo. Alcatel-Lucent USA Inc. v. Twp. of Berkeley Heights, 460 N.J. Super. 243, 249 (App. Div. 2019).

To understand the receipts allocation factor that is at issue, it is helpful to understand what the CBT is. Under the 1998 version of N.J.S.A. 54:10A-2, which was the audit period at issue in this matter, "[e]very domestic or foreign corporation" must pay an annual tax "for the privilege of doing business, employing or owning capital or property, or maintaining an office, in [New Jersey]." N.J.S.A. 54:10A-2 (1998). A corporation doing business in New Jersey that also "maintains a regular place of business outside [New Jersey] 'is obligated to pay tax only on that portion of its entire net income which is allocable to [New Jersey].'" Flagstar Bank v. Dir., Div. of Taxation, 29 N.J. Tax 130, 147 (Tax 2016) (quoting Stryker Corp. v. Dir., Div. of Taxation, 18 N.J. Tax 270, 272-73 (Tax 1999) (citing N.J.S.A. 54:10A-6)).

What is allocable to New Jersey is ordinarily computed using a formula that multiplies a corporation's entire net income by a portion of the corporation's property value within New Jersey, a portion of the sales, or "receipts" from "services performed within [New Jersey]," and the payroll of the corporation.

See N.J.S.A. 54:10A-6(A)-(C); see also Flagstar Bank, 29 N.J. Tax at 147. This formula "[limits] taxation under the CBT to only that income that has a sufficient nexus to New Jersey to satisfy constitutional constraints on State taxation." Flagstar Bank, 29 N.J. Tax at 147 (citing Cent. Nat'l-Gottesman, Inc. v. Dir., Div. of Taxation, 14 N.J. Tax 545, 552 (Tax 1995)).

When the three-factor allocation formula under N.J.S.A. 54:10A-6 does not fit in a situation, because it "does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to [New Jersey]," the commissioner "may adjust it by   . . . (e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to [New Jersey]." N.J.S.A. 54:10A-8(e) (1998).

This section "invest[s] the Director with broad authority to adjust a [N.J.S.A. 54:10A-6] allocation factor if it does not properly reflect a taxpayer's business activity reasonably attributable to [New Jersey]." Hess Realty Corp. v. Dir., Div. of Taxation, 10 N.J. Tax 63, 81 (Tax 1988). Here, the record reflects that Xpedite's users received the benefit of the service at Xpedite's New Jersey headquarters, where the users' messages were processed, the users' messages were monitored, and the reports on the success or failure of the message

deliveries were compiled and then sent to the users, all using the proprietary software located on hardware in Xpedite's New Jersey headquarters. Xpedite's users had to send their customer lists and documents to Xpedite's New Jersey headquarters, using local telephone lines or internet service to which they were personally subscribed, to be processed before they were sent out.

Xpedite's services, and the revenues generated from them, are performed at its headquarters in New Jersey using its hardware and proprietary software, and given the holding under United Parcel, 100% of its receipts could be sourced to New Jersey under subsection (a). However, unlike the taxpayer in United Parcel, Xpedite does utilize some out-of-state phone lines and switches in performing its services, some of which it maintains and owns. Consequently, even if the New Jersey headquarters is directing and monitoring the transmission throughout the entire message delivery, the messages are traveling through that out-of-state equipment. Therefore, 100% receipt allocation to New Jersey may not reflect the realities of its business, and the seventy-six percent allocation reached by the Division using the twenty-five – fifty – twenty-five method under subsection (c), even though it can be inferred that (c) only applies to those out-of-state businesses with mere contact with New Jersey, may more accurately reflect the way Xpedite earns receipts from its services. Under N.J.S.A. 54:10A-

8, the Director exercised broad discretion to adjust a receipts allocation to reflect the economic realities of Xpedite's business.

Therefore, the resulting seventy-six percent allocation from the Division's use of the twenty-five – fifty – twenty-five formula under (c), instead of 100% under United Parcel, reasonably reflects the portion of Xpedite's services performed in New Jersey and was therefore well within the Director's discretion.

The Tax Court's findings are supported by adequate facts in the record. Further, after a de novo review, we discern no error. We do not address Xpedite's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0789-18T3